**Fill in this information to identify the case:**

United States Bankruptcy Court for the:

Southern District of Florida

Case number (If known): _____ Chapter 15

☐ Check if this is an amended filing

Official Form 401

# Chapter 15 Petition for Recognition of a Foreign Proceeding     12/15

If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write debtor's name and case number (if known).

| | | |
|---|---|---|
| 1. | **Debtor's name** | Pharmalab Inc. |

| | |
|---|---|
| 2. | **Debtor's unique identifier** |

**For non-individual debtors:**

☑ Federal Employer Identification Number (EIN)  9 8 – 1 5 4 5 1 2 3

☐ Other _____. Describe identifier _____

**For individual debtors:**

☐ Social Security number:   xxx – xx– ____ ____ ____ ____

☐ Individual Taxpayer Identification number (ITIN):  9 xx – xx – ____ ____ ____ ____

☐ Other _____. Describe identifier _____

| | | |
|---|---|---|
| 3. | **Name of foreign representative(s)** | Ernst & Young Inc. and Martin P. Rosenthal (authorized representative) |
| 4. | **Foreign proceeding in which appointment of the foreign representative(s) occurred** | In the Matter of the Proposed Plan of Compromise or Arrangement of Laboratoires C.O.P. Inc. |
| 5. | **Nature of the foreign proceeding** | Check one:<br>☑ Foreign main proceeding<br>☐ Foreign nonmain proceeding<br>☐ Foreign main proceeding, or in the alternative foreign nonmain proceeding |
| 6. | **Evidence of the foreign proceeding** | ☐ A certified copy, translated into English, of the decision commencing the foreign proceeding and appointing the foreign representative is attached.<br><br>☐ A certificate, translated into English, from the foreign court, affirming the existence of the foreign proceeding and of the appointment of the foreign representative, is attached.<br><br>☑ Other evidence of the existence of the foreign proceeding and of the appointment of the foreign representative is described below, and relevant documentation, translated into English, is attached.<br>(1) CCAA Amended and Restated Initial Order and (2) Board Resolutions |
| 7. | **Is this the only proceeding with respect to the debtor known to the foreign representative(s)?** | ☐ No. (Attach a statement identifying each country in which a foreign proceeding by, regarding, or against the debtor is pending.)<br>☑ Yes |

Debtor   Pharmalab Inc.
_____
         Name

Case number (if known)_____

---

**8. Others entitled to notice**

Attach a list containing the names and addresses of:

(i)   all persons or bodies authorized to administer foreign proceedings of the debtor,

(ii)  all parties to litigation pending in the United States in which the debtor is a party at the time of filing of this petition, and

(iii) all entities against whom provisional relief is being sought under § 1519 of the Bankruptcy Code.

---

**9. Addresses**

Country where the debtor has the center of its main interests:

Canada

Debtor's registered office:

120 NE 5th Avenue, Suite B
Number          Street

P.O. Box

Delray Beach                    FL       33483
City            State/Province/Region   ZIP/Postal Code

United States of America
Country

Individual debtor's habitual residence:

Number     Street

P.O. Box

City       State/Province/Region   ZIP/Postal Code

Country

Address of foreign representative(s):

2875 Boul. Laurier, Bureau 410
Number          Street

P.O. Box

Quebec, Quebec G1V 0C7
City       State/Province/Region   ZIP/Postal Code

Canada
Country

---

**10. Debtor's website (URL)**

https://idealprotein.com

---

**11. Type of debtor**

Check one:

☑ Non-individual (*check one*):

   ☑ Corporation. Attach a corporate ownership statement containing the information described in Fed. R. Bankr. P. 7007.1.

   ☐ Partnership

   ☐ Other. Specify: _____

☐ Individual

---

Debtor    **Pharmalab Inc.**                  Case number (if known) _____
      Name

| | |
|---|---|
| **12. Why is venue proper in *this* district?** | Check one:<br>☐ Debtor's principal place of business or principal assets in the United States are in this district.<br>☐ Debtor does not have a place of business or assets in the United States, but the following action or proceeding in a federal or state court is pending against the debtor in this district:<br><br>_____<br><br>☑ If neither box is checked, venue is consistent with the interests of justice and the convenience of the parties, having regard to the relief sought by the foreign representative, because:<br>The Chapter 15 case of an affiliate is pending in this district . |
| **13. Signature of foreign representative(s)** | I request relief in accordance with chapter 15 of title 11, United States Code.<br><br>I am the foreign representative of a debtor in a foreign proceeding, the debtor is eligible for the relief sought in this petition, and I am authorized to file this petition.<br><br>I have examined the information in this petition and have a reasonable belief that the information is true and correct.<br><br>I declare under penalty of perjury that the foregoing is true and correct,<br><br>*Ernst & Young Inc., Court appointed Monitor*<br>✖ _____    Martin P. Rosenthal<br>     Signature of foreign representative     Printed name<br><br>Executed on   09/26/2023<br>           MM / DD / YYYY<br><br>✖ _____<br>     Signature of foreign representative     Printed name<br><br>Executed on _____<br>         MM / DD / YYYY |
| **14. Signature of attorney** | ✖   */s/ Paul Steven Singerman*     Date    10/5/2023<br>    Signature of Attorney for foreign representative      MM / DD / YYYY<br><br>Paul Steven Singerman<br>Printed name<br>BERGER SINGERMAN LLP<br>Firm name<br>1450 Brickell Avenue, Suite 1900<br>Number    Street<br>Miami                       FL     33131<br>City                         State    ZIP Code<br><br>(305) 755-9500            singerman@bergersingerman.com<br>Contact phone                Email address<br><br>0378860<br>Bar number                       State |

## Exhibit 1

**Pharmalab Inc.**
**Corporate Ownership Statement**

Pursuant to rules 1007(a)(1)(A) and 7007.1 of the Federal Rules of Bankruptcy Procedure, the following are corporations, other than a government unit, that directly or indirectly own 10% or more of any class of the debtor's equity interest:

1. 9327-6269 Quebec Inc.

2. Laboratoires C.O.P. Inc.

For the Court's convenience, a corporate structure chart is attached hereto.

## Corporate Structure Chart



**Exhibit 2**

**Pending Foreign Proceedings with Respect to the Debtors**

  On August 14, 2023, Pharmalab Inc. and three affiliated companies (collectively, the "Debtors") commenced a proceeding under the Companies' Creditors Arrangement Act, R.S.C. 1985, c. C-36 (as amended, the "CCAA") in the Québec Superior Court, Commercial Division, No. 200-11-028737-230 (the "Canadian Proceedings" and such court, the "Canadian Court").

## Exhibit 3

### Rule 1007(a)(4) Schedule of Parties

Pursuant to rule 1007(a)(4)(B) of the Federal Rules of Bankruptcy Procedure, the following are persons or bodies authorized to administer foreign proceedings of the Debtor:

| Authority | Contact |
|---|---|
| Martin P. Rosenthal (Ernst & Young Inc. — Senior Vice President) | 900 Boulevard de Maisonneuve Ouest Bureau 2300 Montréal, Québec H3A 0A8 Canada |
| Ernst & Young Inc. | 2875 Boulevard Laurier Bureau 410 Québec, Québec G1V 0C7 Canada |

The following is a list of pending litigation in which the Debtors are a party in the United States at the time of filing of this petition:

Tracy Gardner
c/o Tanya J. Hansen
Smith, Johnson, Allen, Connick & Hansen
104 N. Wheeler Avenue
Grand Island, Nebraska 68801
Telephone:    (308) 382-1930
thansen@gilawfirm.com

A list of all entities against whom the Debtors are seeking provisional relief under section 1519 of the Bankruptcy Code may be obtained on the website of the Debtors' claims and noticing agent at https://omniagentsolutions.com/Ideal. A copy of the information can also be obtained by emailing the Debtors' claims and noticing agent at IdealInquiries@omniagnt.com with the subject "Ideal Protein."

## **Exhibit 4**

**Board Resolutions Authorizing Foreign Representative**

**PHARMALAB INC.**

(the "**Corporation**")

RESOLUTIONS of the sole shareholder of the Corporation made as of August 14, 2023.

The undersigned, being the sole shareholder of the Corporation and having withdrawn all the powers of the Corporation's board of directors, hereby adopts the following resolutions:

AUTHORIZATION TO FILE AN APPLICATION FOR AN INITIAL ORDER, AN AMENDED AND REINSTATED INITIAL ORDER AND AN ORDER APPROVING A SALE AND INVESTMENT SOLICITATION PROCESS UNDER THE *COMPANIES'S CREDITORS ARRANGEMENT ACT*, LRC C C-36 AND RECOGNITION ORDER UNDER CHAPTER 15 OF THE UNITED STATES BANKRUPTCY CODE

**WHEREAS** the Corporation, after thorough consultation with its legal and financial advisors and the Corporation's management, considers it is insolvent pursuant to the *Companies' Creditors Arrangement Act* (the "**CCAA**");

**WHEREAS** the Corporation believes it is in its best interest and that of all of its stakeholders, including its shareholders, employees, creditors, suppliers, affiliated clinics and product users to file an application (the "**Application**") for the issuance of an Initial Order, an Amended and Restated Initial Order and an Order Approving a Sale and Investment Solicitation Process pursuant to the CCAA (the "**CCAA Proceedings**") and make all arrangements and take all incidental actions in connection with these CCAA Proceedings, including seeking the following relief at the time the Corporation deems appropriate:

    a. the implementation of a sale and investment solicitation process to solicit offers for a broad range of executable transactions in respect of the business and/or assets of the Corporation and its related entities;

    b. the granting of an administration charge up to a maximum amount of $1,000,000 on the present and future assets, property and undertakings of the Corporation (the "**Property**") as security for the payment of the professional fees and disbursements of the proposed Monitor (Ernst & Young Inc.), its legal counsel (Fasken Martineau DuMoulin LLP), the legal counsel of the Corporation and its related entities (McCarthy Tétrault LLP and Kirkland & Ellis LLP), the legal counsel of Bank of Montréal and Fédération des Caisses Desjardins de Québec (the "**Agents**") (Stikeman Elliot LLP), and the Chief Restructuring Officer (RC Benson Consulting Inc.) incurred in connection with the CCAA Proceedings;

    c. the consolidation of the CCAA Proceedings of the Corporation and its related entities for administrative purposes;

d.  authorizing the proposed Monitor to borrow, for and on behalf of the Corporation and its related entities, from the lenders party to the Credit agreement dated September 30, 2018 (as amended from time to time) (the "**Lenders**"), from time to time an amount not exceeding $4,000,000 (collectively, the "**Temporary Advances**"), to be advanced by the Lenders in order to finance the CCAA Proceedings as well as the ongoing operations of the Corporation during the implementation of the restructuring;

e.  the granting of a charge on the Property in favor of the Lenders up to a maximum amount of $4,800,000, to secure the repayment of the Temporary Advances;

f.  authorizing, *nunc pro tunc*, the transfer of a total amount of approximately 17 million US dollars previously held by the Corporation and its related entities, to a bank account opened at Desjardins on behalf of the Corporation and its related entities;

g.  the granting of an indemnity charge up to an amount of $300,000 on the Property as security for the potential liability of the officers of the Corporation and its related entities, the Monitor and the Chief Restructuring Officer incurred in such capacity after the date of the Initial Order;

h.  approving a key employee retention plan (the "**KERP**") to secure the ongoing and continued support of certain key employees of the Corporation and its related entities and as an incentive for these employees to continue their employment through the CCAA Proceedings;

i.  the granting of a KERP charge on the Property as security for the payments of the amounts owed by the Corporation and its related entities under the KERP; and

j.  authorizing the Corporation's to apply, as it may consider necessary or desirable, to any other court, tribunal, regulatory, administrative or other body, wherever located, for orders to recognize and/or assist in carrying out the terms of the Initial Order and any subsequent Orders rendered by the Court in the context of the CCAA Proceedings, including, without limitation, orders under the Chapter 15 of the United States *Bankruptcy Code* 11 U.S.C. §§ 101-1532.

(collectively, the "**Relief**")

**WHEREAS** the Corporation believes that it is in its best interest and that of all of its stakeholders, including its shareholders, employees, creditors, suppliers, affiliated clinics and product users, to seek the recognition of the CCAA Proceedings in the United States by filing a petition commencing proceedings under the Chapter 15 of the United States Bankruptcy Code;

**WHEREAS** the Corporation wishes Ernst & Young Inc. to act as monitor (the "**Monitor**") and RC Benson Consulting Inc to act as Chief Restructuring Officer, for the purpose of

the CCAA Proceedings and to retain McCarthy Tétrault LLP and Kirkland & Ellis LLP as its solicitors to represent the Corporation in the CCAA proceedings and in seeking the recognition of the CCAA proceedings in the United States by filing a petition commencing proceedings under the Chapter 15 of the United States Bankruptcy Code.

**IT IS HEREBY RESOLVED:**

1.   **TO AUTHORIZE** the Corporation to execute, deliver and file the Application and any and all ancillary documents required for the purpose of the Application with the Superior Court of Québec (the "**Court**") and to seek the recognition of the CCAA Proceedings in the United States by filing a petition commencing proceedings under the Chapter 15 of the United States Bankruptcy Code.

2.   **TO AUTHORIZE** the Corporation to retain Ernst & Young Inc. as Monitor for the purpose of the CCAA proceedings, to retain McCarthy Tétrault LLP and Kirkland & Ellis LLP as its solicitors to represent the Corporation in connection with the CCAA Proceedings and to seek the recognition of the Initial Order in the United States by filing a petition commencing proceedings under the Chapter 15 of the United States Bankruptcy Code.

3.   **TO AUTHORIZE** the Corporation to seek the Relief under the Initial Order, the Amended and Restated Initial Order and/or the Order Approving a Sale and Investment Solicitation Process, as the case may be.

4.   **TO AUTHORIZE** any officer or director of the Corporation or RC Benson Consulting Inc. (Mr. Randy Benson), acting alone, for and on behalf and in the name of the Corporation, to execute and deliver the Application and ancillary agreements, instruments, deeds, affidavits and other documents, including any key employee retention program, with such changes, additions, and alterations thereto, if any, as such officer, director or Chief Restructuring Officer of the Corporation executing the same may approve, such approval to be conclusively evidenced by his or her execution thereof, in order to give full effect to the foregoing.

5.   **TO AUTHORIZE AND DIRECT** any other officer or director of the Corporation or RC Benson Consulting Inc. (Mr. Randy Benson), and each of them, to take any and all actions, make any and all filings and expenditures and take any and all steps that such officer, director or Chief Restructuring Officer of the Corporation may determine necessary, desirable or appropriate in order to carry out the purpose and intent of and to consummate any of the actions contemplated by any of the foregoing resolutions in the name of and on behalf of the Corporation.

**LABORATOIRES C.O.P. INC.**

Per:   *Dawn Halkuff*
       E9207C2192DD4D6...

       Dawn Halkuff

## **Exhibit 5**

**CCAA Order[1]**

---

## UNOFFICIAL TRANSLATION

## SUPERIOR COURT
(Commercial Division)

**CANADA**
**PROVINCE OF QUÉBEC**
**DISTRICT OF QUÉBEC**

**Nᵒ: 200-11-028737-230**

**DATE : August 25, 2023**

---

**THE HONOURABLE ERIC HARDY, J.S.C., PRESIDING**

---

**IN THE MATTER OF THE** *COMPANIES' CREDITORS ARRANGEMENT ACT,* R.S.C. 1985, c. C-36:

**BANK OF MONTRÉAL**
-and-
**FÉDÉRATION DES CAISSES DESJARDINS**

       Agents

-and-

**LABORATOIRES C.O.P INC.**
-and-
**9327-9269 QUEBEC INC.**
-and-
**PHARMALAB INC.**
-and-

**IDEAL PROTEIN OF AMERICA, INC.**

       Debtors

-and-

**ERNST & YOUNG INC.**

       Monitor

---

## AMENDED AND RESTATED INITIAL ORDER

---

**CONSIDERING** the *Application for the issuance of an initial order and an amended and restated initial order and an order approving a sale and investment solicitation process* presented by Laboratoires C.O.P. Inc., 9327-6269 Québec Inc., Pharmalab Inc., and Ideal Protein of America, Inc. (collectively, the "**Debtors**"), under the *Companies'*

- 2 -

*Creditors Arrangement* Act, R.S.C. (1985), c. C-36, as amended (the "**CCAA**"), the exhibits and affidavit of Randy Benson filed in support thereof (the "**Application**"), the consent of Ernst & Young Inc. to act as monitor of the Debtors ("**E&Y**" or the "**Monitor**"), as well as E&Y's report filed on August 24th, 2023, in its capacity as proposed Monitor of the Debtors, having relied on the representations of legal counsel and having been advised that all interested parties, including secured creditors who are likely to be affected by the charges herein were given prior notice of the presentation of the Application;

**CONSIDERING** the provisions of the CCAA;

**CONSIDERING** the provisions of the initial order issued by this Court on August 15, 2023 (the "**Initial Order**");

**CONSIDERING** that it is appropriate, among other things, to issue an amended and restated initial order under the CCAA providing, among other things, for the extension of the stay period of all proceedings against the Debtors and their assets (including any proceedings to reclaim the latter);

**WHEREFORE, THE COURT** :

[1]    **GRANTS** the Application.

[2]    **ISSUES** this order under the CCAA (the "**Order**"), divided under the following headings:

- Service
- Application of the CCAA
- Effective Time
- Procedural Consolidation
- Plan of Arrangement
- Stay of Proceedings against the Debtors and the Property
- Stay of Proceedings against the Directors of the Debtors
- Possession of Property and Operations
- No Exercise of Rights or Remedies
- No Interference with Rights
- Continuation of Services
- Non-Derogation of Rights
- The Lenders are Unaffected Creditors
- Transfer and interim distribution of Surplus Cash
- Restructuring
- Powers of the Monitor
- Appointment of the Chief Restructuring Officer
- Indemnification Charge
- Interim Advances and Interim Advances Charges
- Priorities and General Provisions Relating to CCAA Charges
- Procedures
- General

**Service**

[3]   **ORDERS** that any prior delay for the presentation of the Application be hereby abridged and accepted so that it may be validly presented today;

[4]   **DECLARES** that the sufficient prior notice of the presentation of this Application has been given by the Debtors to the interest parties, including secured creditors likely to be affected by the charges established under this Order**;**

[5]   **PERMITS** the service of the Order at any time, in any place and by any means, including e-mail.

**Application of the CCAA**

[6]   **DECLARES** that the Debtors are debtor companies to which the CCAA applies.

**Effective time**

[7]   **DECLARES** that this Order and all of its provision are effective as of 12 :01 a.m. Quebec time, province of Quebec, on the date of this Order (the "**Effective Time**").

**Procedural Consolidation**

[8]   **ORDERS** the consolidation of the present proceedings initiated against the Debtors under the CCAA (the "**CCAA Proceedings**") under a single file number 200-11-028737-230.

[9]   **ORDERS** that all fillings, applications and other proceedings and documents in connection with the CCAA Proceedings henceforth be filed under file number 200-11-028737-230.

[10]  **DECLARES** that the consolidation of these CCAA Proceedings ordered herein shall be for administrative purposes only and shall not affect a consolidation of the assets and property or of the debts and obligations of each of the Debtors, including, without limitation, for purposes of any Plan (as defined herein below) that may be implemented.

**Plan of Arrangement**

[11]  **DECLARES** that the Debtors and the Monitor shall have the sole authority to file with this Court and submit one or more Plans of compromise or arrangement with respect to the Debtors (collectively, the "**Plan**") in accordance with the provisions of the CCAA.

**Stay of Proceedings against the Debtors and the Property**

[12]  **ORDERS** that, until and including October 6, 2023 or at a later date that the Court may determine (the "**Stay Period**"), no proceedings or enforcement

- 4 -

process before any court or tribunal (collectively the "**Proceedings**"), shall be commenced or continued against or in respect of the Debtors or affecting the Debtors' business, operations and commercial activities (the "**Business**") or the Property (as defined herein below), including as provided in paragraph [17] hereinbelow, except with leave of this Court.  Any and all Proceedings currently under way against or in respect of the Debtors or affecting the Business or the Property are hereby suspended pending further order of this Court, the whole subject to the provisions of subsection 11.1 of the CCAA.

[13]    **ORDERS** that the rights of His Majesty in right of Canada and His Majesty in right of a Province are suspended in accordance with the terms and conditions of subsection 11.09 of the CCAA.

**Stay of Proceedings against the Directors of the Debtors**

[14]    **ORDERS** that during the Stay Period and except as permitted under subsection 11.03(2) CCAA, no Proceedings may be commenced or continued against any former, present or future director or officer of the Debtors nor against any person deemed to be a director or an officer of the Debtors under subsection 11.03(3) of the CCAA (each**,** a **"Director"** and collectively, the **"Directors"**) with respect to any claim against such Director which arose prior to the Effective Time and which relates to any obligation of the Debtors where it is alleged that any of the Directors is, under any law, liable in such capacity to pay such obligation.

**Possession de Property and Operations**

[15]    **ORDERS** under reserve of rights and powers granted to the Monitor under the present Order, that each of the Debtors shall remain in possession and control of its present and future assets, rights, undertakings and properties of every nature and kind whatsoever and wherever situated, including all proceeds thereof (collectively, the "**Property**"), the whole in accordance with the terms and conditions of this Order.

[16]    **ORDERS** that, subject to the provisions of this Order and of the CCAA, and in all cases, with the consent of the Monitor (after consultation with the Agents), the Debtors may pay, without having the obligation to do so, all the reasonable expenses incurred by the Debtors for the operation of their respective business in the ordinary course following the issuance of this Order, and in the execution of the provisions of this Order, which expenses may include, namely:

a)    all expenses and capital expenditures that are reasonably necessary to preserve the Property or the Business; and

b)    the payment for goods or services effectively provided to the Debtors following the date of this Order.

**No Exercise of Rights or Remedies**

[17]    **ORDERS** that, during the Stay Period and subject to, *inter alia*, subsection 11.1 of the CCAA, all rights or remedies (including any right of rescission or claim) of any individual, natural person, firm, corporation, partnership, limited liability company, trust, joint venture, association, organization, governmental body or agency, or any other entity (collectively, the "**Persons**" and individually, a "**Person**") against or with respect to the Debtors or affecting the Business, the Property or any part of the Business or the Property, are hereby stayed and suspended, except with leave of this Court.

[18]    **DECLARES** that to the extent  any rights, obligations, or prescription, time or limitation periods, including without limitation, to file grievances, relating to the Debtors, or any of the Property or the Business, may expire (other than pursuant to the terms of any contracts, agreements or arrangements of any nature whatsoever), the term of such rights, obligations,  prescription, time or limitation period shall hereby be deemed to be extended by a period equal to the Stay Period.  Without limiting the generality of the foregoing, if the Debtors become bankrupt or a receiver is appointed as defined in subsection 243(2) of the *Bankruptcy and Insolvency Act (Canada)* (the "**BIA**") in respect of the Debtors, the period elapsed between the date of the Initial Order and the day on which the Stay Period ends shall not be calculated in respect of the Debtors in determining the thirty (30) day period referred to in section 81.1 of the BIA.

**No Interference with Rights**

[19]    **ORDERS** that, during the Stay Period, no Person shall have the right to discontinue, fail to honor, alter, interfere with, repudiate, resiliate, terminate or cease to exercise any right, renewal right, contract, agreement, licence or permit in favour of or held by the Debtors, except with the written consent of the Monitor, or unless with leave of the Court.

**Continuation of Services**

[20]    **ORDERS** that, during the Stay Period and under reserve of paragraph [23] hereof and subsection 11.01 of the CCAA, all Person having oral or written agreements with the Debtors or statutory or regulatory mandates for the supply of goods or services, including without limitation all computer software, data processing services, centralized banking services, payroll services, insurance, transportation, utility services or other goods and services made available to the Debtors shall be hereby restrained, until further order of this Court, from interrupting, failing to renew per the same terms and conditions, altering, refusing to renew, interfering with or terminating the supply of such goods or services as may be required by the Debtors, and that the Debtors shall be entitled to the continued use of their current premises, telephone numbers, facsimile numbers, Internet addresses, Internet domain names or other services, provided in each case that the normal prices or charges for all such goods or services received after the date of the Initial Order are paid by the Debtors, without having to

provide a security deposit or any other security, in accordance with normal payment practices of the Debtors or such other practices as may be agreed upon by the supplier of goods or services and by the Debtors, with the consent of the Monitor or as may be ordered by this Court.

[21]   **ORDERS** that, notwithstanding anything contained herein and subject to subsection 11.01 of the CCAA, no Person shall be prohibited from requiring immediate payment for goods, services, the use of leased or licensed property or other valuable consideration provided to the Debtors on or after the date of the Initial Order, nor shall any Person be under any obligation to make further advance of money or otherwise extend any credit to the Debtors.

[22]   **ORDERS** that, without limiting the generality of the foregoing and subject to section 21 of the CCAA and paragraph [25] of this Order, if applicable, cash or cash equivalents placed on deposit by the Debtors with any Person, during the Stay Period, whether in an operating account or in another account, for themselves or for another entity, shall not be applied by such Person in reduction or repayment of amounts due as of the date of the Initial Order or due on or before the expiry of the Stay Period or in satisfaction of any interest or charges accruing in respect thereof.   However, this provision does not prevent any financial institution from: (i) reimbursing themselves for the amount of any cheque drawn by the Debtors and properly honoured by such institution, or (ii) holding the amount of any cheque or other instrument deposited to the account of the Debtors until those cheques or other instruments has been honoured by the financial institution on which they have been drawn.

**Non-Derogation of Rights**

[23]   **ORDERS** that, notwithstanding the foregoing, any Person having provided any kind of letter of credit, surety bond, guarantee or bond (the "**Issuing Party**") at the request of the Debtors, shall be required to continue honouring any and all such letters of credit, surety bonds, guarantees and bonds issued on or before the date of the Initial Order provided that all conditions set forth herein are met save, and except for any defaults resulting from this Order.  However, the Issuing Party shall be entitled, where applicable, to retain bills of lading or shipping or other documents relating thereto until paid.

**The Lenders are Unaffected Creditors**

[24]   **ORDERS** that notwithstanding any other provision contained in this Order, the Agents and the lenders who are members of the syndicate of lenders represented by the Agents (the " **Lenders**") as well as the other lenders (the "**Lenders**") that are party to the Credit Agreement executed with he Debtors and dated September 30, 2015, as amended from time to time, shall be non-targeted creditors in these CCAA Proceedings and in any Plan that may be filed in the context of these proceedings, and their claims against the Debtors, including in connection with any Interim Advance made to the Monitor in accordance with this

this Order (or any subsequent order of this Court), shall not be subject to arrangement or compromise except with their express consent.

**Transfer and interim distribution of Surplus Cash**

[25]    **AUTHORIZES**, *nunc pro tunc*, the transfer of the Surplus Cash (as defined in the Application) previously held by the Debtors to a bank account opened with Desjardins on behalf of the Debtors and under the exclusive control of the Monitor (the "**Desjardins Account**").

[26]    **AUTHORIZES** the Monitor to proceed with an interim distribution to the Lenders of the balance of the Surplus Cash held in the Desjardins Account, less the amounts of the Interim Advances permitted by the Court in accordance with this Order, the whole subject to the receipt by the Monitor of a legal opinion confirming the validity of the Lenders' security.

**Restructuring**

[27]    **DECLARES** that, to facilitate the orderly restructuring of the business and financial affairs of the Debtors (the "**Restructuring**"), but subject to such requirements as are imposed by the CCAA, the Debtors, subject to the Monitor's approval, or the Monitor, shall have the right to do, for and on behalf of the Debtors, subject to the provisions of the CCAA and in all cases, in consultation with the Agents, the following:

a)    cease, downsize or shut down any of their operations or close any of the Debtors' establishments, temporarily or permanently, as they deem appropriate, and make provisions for the consequences thereof in the Plan, as applicable;

b)    pursue all avenues to finance or refinance, offer for sale, transfer, assign or in any other manner dispose of the Business or the Property, in whole or in part, subject to further order of the Court, sections 11.3 and 36 of the CCAA and subject to subparagraph [27]b);

c)    convey, transfer, assign, lease or any other manner dispose of the Property, outside the ordinary course of business, in whole or in part, provided that the price in each case does not exceed $100,000 or $1,000,000 in the aggregate;

d)    terminate or lay off, temporarily or permanently, the employees of the Debtors, as they deem appropriate and, to the extent that any amounts in lieu of notice or termination or other amounts in respect thereof are not paid in the ordinary course of business, enter into an agreement to that effect on such terms as the Monitor and such employee shall have agreed upon or, failing such agreement, deal with the consequences thereof in the Plan, if any, as the Monitor may determine;

e)  subject to section 32 of the CCAA, disclaim or resiliate any agreement, contract or arrangement of any nature whatsoever, together with any disclaimer or resiliation which may be agreed between the Monitor and the relevant party or, failing such an agreement, to make a provision for the consequences therefor in the Plan, if any, as the Monitor may determine; and

f)  subject to section 11.3 CCAA, assign all rights and obligations of the Debtors.

[28]  **DECLARES** that if a notice of resiliation is given to a landlord of any of the Debtors pursuant to section 32 of the CCAA and subparagraph [27]e) of this Order, then a) during the notice period prior to the effective time of the notice of disclaimer or resiliation, the landlord may show the affected leased premises to prospective tenants during normal business hours by giving the Monitor 24 hours' prior written notice, and b) at the effective time of the notice of termination, the landlord shall be entitled to take possession thereof without waiver of any rights or claims against the relevant Debtors, provided nothing herein shall relieve a landlord of its obligation to mitigate any damages claimed by reason of such resiliation, if any;

[29]  **ORDERS** that the Monitor shall provide to any relevant landlord notice of its intention to remove any fittings, fixtures, installations or leasehold improvements, from the Debtors, at least seven (7) days in advance.  If the Debtors have already vacated the leased premises, they shall not be considered to be in occupation of such location pending resolution of any dispute between them or between the Monitor and the landlord.

[30]  **DECLARES** that, in order to facilitate the Restructuring, the Monitor may settle claims of customers and suppliers that are in dispute.

[31]  **DECLARES** that, pursuant to the *Personal Information Protection and Electronic Documents Act*, S.C. 2000, c.5, and the *Act respecting the protection of personal information in the private sector*, CQLR, c. P-39.1, the Monitor is permitted, in the course of the CCAA Proceedings, to disclose personal information of identifiable individuals in its possession or control to interested parties or prospective investors, financiers, buyers or strategic partners and to their advisors (individually, a "**Third Party**"), but only to the extent that it is desirable or required to negotiate and complete the Restructuring or preparation and implementation the Plan or a transaction for that purpose, provided that the Persons to whom such personal information is disclosed enter into confidentiality agreements binding them to maintain and protect the privacy of such information and to limit its use to the extent necessary to complete the transaction or the Restructuring then under negotiation. Upon the completion of the use of personal information for the limited purposes set out herein, the personal information shall be returned to the Debtors or destroyed. In the event that a Third Party acquires personal information as part of the Restructuring or the preparation and implementation of the Plan or a transaction in furtherance thereof, such Third Party may continue to

use the personal information in a manner which in all respects identical to the prior use thereof by the Debtors.

**Powers of the Monitor**

[32]    **CONFIRMS** and **RATIFIES** hereby the appointment of Ernst & Young Inc as monitor to supervise the business operations and financial affairs of the Debtors as an officer of this Court and that the Monitor, in addition to the prescribed powers and obligations referred to in section 23 of the CCAA and otherwise provided for in this Order (including at paragraphs [27] and [33] herein):

    a)    shall, without delay, i) publish on the Monitor's website (the **"Website"**) a notice containing the information prescribed by the CCAA, ii) make this Initial Order publicly available in the manner prescribed by the CCAA, iii) send, in the manner prescribed under the CCAA, a notice to all known creditors of the Debtors having a claim of more than $1,000 against the Debtors, advising them that this Order is publicly available and, iv) prepare a list of the names and addresses of such creditors and the estimated amount of their respective claims and make such list publicly available in the prescribed manner, all in accordance with subparagraph 23(1) (a) of the CCAA and the regulations thereunder;

    b)    shall monitor the Debtors' operations and financial affairs, including namely their receipts and disbursements;

    c)    shall assist the Debtors, to the extent required, in dealing with their creditors and other interested Persons during the Stay Period;

    d)    shall assist the Debtors, to the extent required, with the preparation of their cash-flow projections and any other projections or reports and the development, negotiation and implementation the Plan;

    e)    shall assist and advise the Debtors, to the extent required, to review their business operations and to evaluate opportunities for cost reduction and revenue enhancement and operating efficiencies;

    f)    shall assist the Debtors, to the extent required, with the Restructuring, and in their negotiations with their creditors and other interested Persons and with the holding and administering of any meetings held to consider the Plan and holding a vote, as the case may be;

    g)    shall report to the Court and to the Agents on the state of the business and financial affairs of the Debtors, or all developments in these proceedings, or any related proceedings related within the time limits set forth by the CCAA, and at such time limits as considered appropriate by the Monitor or as the Court may order, and the Monitor may file consolidated reports for the Debtors;

h) shall report to this Court and interested parties, including but not limited to the Debtors, the Agents and creditors affected by the Plan, with respect to the Monitor's assessment and recommendations with respect to the Plan;

i) may retain and employ such agents, advisers and other assistants as are reasonably necessary for the purpose of carrying out this Order, including, without limitation, one or more entities related to or affiliated with the Monitor;

j) may engage legal counsel to the extent that the Monitor considers necessary in connection with the exercise its powers or the discharge of its obligations in this proceeding and any related proceeding under the Order or the CCAA;

k) may act as "foreign representative" of the Debtors or in any other similar capacity in connection with any insolvency, bankruptcy or restructuring proceedings instituted elsewhere;

l) may give any consent or approval as may be required by this Order or the CCAA;

m) may hold and administer funds in connection with arrangements made among the Debtors, any counterparties and the Monitor, or by Order of this Court; and

n) may perform such other duties as are required by the Order or the CCAA or required by this Court from time to time.

[33] **ORDERS** that in addition to the powers set forth in paragraph [32] hereof and subject to further orders of this Court, the Monitor shall also be authorized, but not required, to exercise the following powers for and on behalf of the Debtors, but after consultation with the Agents:

a) direct and control the financial affairs and operations of the Debtors and to carry on the business of the Debtors;

b) execute banking and other transactions on behalf of the Debtors and to sign documents or take any other step that is necessary or appropriate for the exercise of such authority;

c) execute such documents as may be necessary in any proceedings before this Court or pursuant to any order of this Court;

d) take steps for the preservation and protection of the Business and the Property;

e) take any step that the Debtors may take under the CCAA or this Order;

f) enter into agreements with respect to the Business or the Property;

g) file any application to the Court for the issuance of any order that may be necessary or appropriate in order to convey the Property to one or more purchasers thereof;

h) take any action required to be taken by the Debtors pursuant to this Order or any other order of the Court;

i) exercise, on behalf of the Debtors, the rights and privileges to which the Debtors may be entitled as shareholders, partners, members or otherwise;

j) provide information to the Agents concerning the Business and the Property;

k) examine under oath any Person reasonably believed to have information concerning the Debtors, the Business or the Property and to order such Person to produce any books, records, correspondence or documents in his or her possession or control relating to the Debtors, the Business or the Property; and

l) take any step, enter into any agreement, execute any document, incur any obligation or take any other step necessary, useful or ancillary to the exercise of the aforesaid powers.

[34] **DECLARES** that the Monitor is authorized and empowered, but not obligated, to operate and control, on behalf of the Debtors, all existing accounts of the Debtors, maintained with any financial institution (individually, an "**Account**" and collectively, the "**Accounts**")) in such manner as the Monitor, in its sole discretion, deems necessary or appropriate, including, but not limited to:

a) exercise control over funds credited to or deposited in the Accounts;

b) make any disbursements on the Accounts authorized by this Order or any other order issued in the CCAA Proceedings;

c) give instructions with respect to the Accounts and funds credited thereto or deposited therein, including transferring funds credited thereto to or deposited in any other account as the Monitor may direct; and

d) add or remove persons having signing authority with respect to an Account or order the closure of an Account.

[35] **ORDERS** that the Debtors and their Directors, officers, employees and agents, accountants, auditors and any other Persons having notice of this Order shall cooperate with the Monitor in the exercise of its mandate and shall provide the Monitor with unrestricted access without delay to all of the Business and Property, including the premises, books, records and data, including data in electronic form, and to all other documents of the Debtors.

- 12 -

[36]    **DECLARES** that the Monitor is authorized to provide creditors and other relevant interested parties of the Debtors information in response to requests made by them who in writing addressed to the Monitor and copied to the Debtors' counsel. In the case of information that the Monitor has been advised by the Debtors is confidential, proprietary or of competitive nature, the Monitor shall not disclose such information to any Person without the consent of the Debtors, unless otherwise authorized under the Initial Order or unless otherwise directed by the Court.

[37]    **DECLARES** that if the Monitor, in its capacity as Monitor, carries on the operation of the Business of the Debtors or continues the employment of the Debtor's employees, the Monitor shall benefit from the provisions of section 11.8 of the CCAA.

[38]    **ORDERS** that neither the Monitor nor any employee or agent of the Monitor shall be deemed (i) to be a director, officer or trustee of the Debtors, (ii) to assume any obligation incumbent upon the Debtors or (iii) to assume any fiduciary duty to the Debtors or any other Person, including any creditor or shareholder of the Debtors.

[39]    **DECLARES** that no action or other proceeding shall be commenced against the Monitor relating to its appointment, its conduct as Monitor or the carrying out of the provisions of any order of this Court, except with the prior leave of this Court and on at least seven (7) days notice to the Monitor and its counsel. Entities related to the Monitor or belonging to the same group as the Monitor are also entitled to the protections, safeguards, advantages and privileges conferred on the Monitor by virtue of this Order.

[40]    **ORDERS** that the Debtors shall pay the reasonable fees and disbursements of the Monitor, the Monitor's legal counsel, the Debtors' legal counsel, the Chief Restructuring Officer and the Agents' legal counsel, insofar as they relate to these CCAA Proceedings, whether incurred before or after the date of the Initial Order and shall provide each with a reasonable retainer in advance on account of such fees and disbursements, if so requested.

[41]    **DECLARES** that the Monitor, the Monitor's legal counsel, the Debtors' legal counsel, the Agents' legal counsel, and the Chief Restructuring Officer (as defined herein below), as security for the professional fees and disbursements incurred both before and after the making of the Initial Order and directly related to these CCAA Proceedings, be entitled to benefit of and are hereby granted a charge, a security interest and a hypothec on the Property (the "**Administrative Charge**") for a total sum of $1,000,000, in accordance with the priority established in paragraph [60] hereof.

**Appointment of the Chief Restructuring Officer**

[42]     **ORDERS** that RC Benson Consulting Inc. ("**RC Benson**") is hereby appointed as chief restructuring officer of the Debtors (the "**Chief Restructuring Officer**") in the CCAA Proceedings.

[43]     **ORDERS** that the letter of engagement of the Chief Restructuring Officer (Exhibit R-14, filed under seal) in support of the Application (the "**The Engagement Letter of the Chief Restructuring Officer**") be approved and **AUTHORIZES** the Chief Restructuring Officer to carry out his mandate pursuant to the Engagement Letter of the Chief Restructuring Officer.

[44]     **ORDERS** that the Debtors and their Directors, officers, employees and agents, accountants, auditors and all other Persons having notice of this Order shall cooperate with the Chief Restructuring Officer in the exercise of his mandate and forthwith provide the Chief Restructuring Officer with unrestricted access to all of the Business and Property, including, without limitation, the premises, books, records and data, including data in electronic form, and to all other documents of the Debtors.

[45]     **ORDERS** that the Debtors shall pay the professional fees and disbursements of the Chief Restructuring Officer, in accordance with the terms of the Engagement Letter of the Chief Restructuring Officer, whether incurred before or after this Order, and that the Debtors provide to the Chief Restructuring Officer a reasonable retainer in advance on account of such fees and disbursements, if so requested, and **ORDERS** that, in accordance with paragraph [41] hereof, professional fees and disbursements payable to the Chief Restructuring Officer pursuant to the Engagement Letter of the Chief Restructuring Officer be guaranteed by the Administrative Charge.

[46]     **ORDERS** that neither the Chief Restructuring Officer nor any employee or agent of the Chief Restructuring Officer shall be deemed (i) to be a director, officer or trustee of the Debtors, (ii) to assume any obligation incumbent upon the Debtors or (iii) to assume any fiduciary duty to the Debtors or any other Person, including any creditor or shareholder of the Debtors.

**Indemnification Charge**

[47]     **ORDERS** that the Debtors indemnify the Monitor, the officers of the Debtors and the Chief Restructuring Officer against all claims relating to any obligations or liabilities they may incur as a result of or in connection with their respective capacities as Monitor, officers of the Debtors or Chief Restructuring Officer, except where such obligations or liabilities have been incurred as a result of the gross negligence, willful misconduct or intentional fault on their part.

[48]     **DECLARES** that Monitor, together with the officers of the Debtors and the Chief Restructuring Officer, shall have and are hereby granted a charge, a security interest and a hypothec on the Property up to a total amount of $300,000 (the

"**Indemnification Charge**"), as security for the indemnification obligation set forth in paragraph [47] hereof as of the Effective Time. The Indemnification Charge shall have the priority set forth in paragraph [60] hereof.

[49]     **ORDERS** that, notwithstanding any provision of an applicable insurance policy to the contrary, a) no insurer shall be subrogated to the Indemnification Charge or be entitled to claim any benefits therefrom and b) the Monitor, the officers of the Debtors and the Chief Restructuring Officer shall only benefit from the Indemnification Charge to the extent that they do not have insurance coverage permitting their indemnification with respect to the claims set forth in paragraph [47] hereof, or to the extent that such coverage is insufficient to pay the amounts that the Monitor, the officers of the Debtors and the Chief Restructuring Officer are entitled to receive as indemnification pursuant to paragraph [47].

**Interim Advances and Interim Advances Charge**

[50]     **ORDERS** that the Monitor is authorized to borrow, from the Lenders, any sum of money, from the Surplus Cash (as defined in the Application) transferred to the Desjardins Account, that the Monitor may deem necessary or desirable, provided that the amount of unpaid principal does not exceed the amount of $4,000,000, or such greater amount as the Court may authorize, from time to time, in a subsequent order (collectively, the "**Interim Advances**" and each a "**Interim Advance**"), and this, at any time and at the interest rates it deems appropriate, for the purpose of financing the CCAA Proceedings and the exercise of the powers and duties conferred upon it by this Order, including provisional expenses.

[51]     **ORDERS** that all of the Property be and is hereby encumbered by a charge, a security and a hypothec up to an aggregate amount of $4,800,000 (the "**Interim Advance Charge**") in favour of the Lenders as security for all of the obligations of the Debtors to the Lenders in respect of all amounts owing (including principal, interest and other charges) and arising out of or in connection with the Interim Advances. The Interim Advances Charge shall have the priority set out in paragraph [60] hereof.

[52]     **ORDERS** that the Monitor may issue certificates, substantially in conformity with the form attached hereto as **Appendix "A"** (each, the "**Monitor's Certificate**") for any amount that the Monitor borrows pursuant to this Order.

[53]     **ORDERS** that that any amounts borrowed by the Monitor pursuant to this Order (or any subsequent Order of this Court), as well as any Monitor's Certificates evidencing such borrowings or any part thereof, shall rank *pari passu,* unless otherwise agreed by the holders of any previously issued Monitor's Certificate.

[54]     **DECLARES** that the Agents, acting for the benefit of the Lenders, may:

a)     notwithstanding any other provision of this Order, take from time to time any steps as they deem necessary or appropriate to register, record or

publish the Interim Advances Charge in all jurisdictions as they deem appropriate; and

b) notwithstanding any other provision of this Order, refuse to make any advance to the Monitor to the extent they deem appropriate.

[55]  **ORDERS** that subject to a further order of this Court, no order modifying, rescinding or otherwise affecting paragraphs [50] and [54] hereof shall be made unless a) notice of the application for such order is served on the Agents and the Agents' counsel by the party making such application at least seven (7) days prior to the presentation of such application to the Court or b) the Debtors consent thereto.

**Key Employee Retention Plan (KERP) and KERP Charge**

[56]  **APPROVES** the employee and key employee retention plan described at Exhibits R-17 under seal and R-18, under seal (the "**KERP**").

[57]  **DECLARES** that the employees and officers benefitting from the KERP shall have and are hereby granted a charge, a security interest and a hypothec on the Property up to a total amount of $2,150,000 (the "**KERP Charge**"), as security for the indemnification obligation set forth in the KERP. The KERP Charge shall have the priority set forth in paragraph [60] hereof.

[58]  **AUTHORIZES** the Monitor to undertake all measures deemed necessary to ensure the implementation of the KERP.

[59]  **ORDERS** that during these CCAA Proceedings, the Monitor or the Debtors may petition this Court to obtain directions with respect to the KERP.

**Priorities and General Provisions Relating to CCAA Charges**

[60]  **DECLARES** that the priorities of the Administrative Charge, the Indemnification Charge and the Interim Advances Charge (collectively, the "**CCAA Charges**") as between them with respect to the Property to which they apply, shall be as follows:

a) first, the Administrative Charge;

b) second, the Indemnification Charge;

c) third, the KERP Charge; and

d) fourth, the Interim Advances Charge.

[61]  **DECLARES** that each of the CCAA Charges rank senior and in priority to all other hypothecs, mortgages, liens security interests, priorities, charges, encumbrances or security of any nature whatsoever (collectively,

"**Encumbrances**") affecting the Property charged by such Encumbrances, including deemed trusts.

[62]    **ORDERS** that, except as otherwise expressly provided for herein, the Debtors shall not grant any Encumbrances in or against a Property that rank in priority to or equal or *pari passu* to the CCAA Charges, unless they obtain the prior written consent of the Monitor, and the prior approval of the Court.

[63]    **DECLARES** that each of the CCAA Charges shall attach, as of the Effective Time, to all present and future Property of the Debtors, notwithstanding any requirement for the consent of any party to any such charge or to comply with any condition precedent.

[64]    **DECLARES** that the CCAA Charges and the rights and remedies of the beneficiaries of such CCAA Charges shall be valid and enforceable and shall not otherwise be limited or impaired in any way by: i) this proceeding and the declaration of insolvency made herein; ii) any application for a bankruptcy order filed pursuant to the BIA in respect to the Debtors, or any bankruptcy order made pursuant to such application or any assignment in bankruptcy made or deemed to be made in respect of the Debtors, or iii) any negative covenants, prohibitions or other similar provisions with respect to borrowings, indebtedness or Encumbrances contained in any agreement, lease, sub-lease, offer to lease or other arrangement which binds on the Debtors (a "**Third Party Agreement**"), and notwithstanding any provision to the contrary in any Third Party Agreement :

   a)    the creation of the CCAA Charges does not and shall not be deemed to constitute a breach by the Debtors of any Third Party Agreement to which they are a party; and

   b)    the beneficiaries of the CCAA Charges shall not have liability to any Person whatsoever as a result of any breach of any Third Party Agreement caused by or resulting from the creation of the CCAA Charges.

[65]    **DECLARES** that notwithstanding: i) this proceeding and any declaration of insolvency made herein, ii) any application for a bankruptcy order filed in respect of the Debtors pursuant to the BIA and any bankruptcy order granted thereunder or any assignment of property involving the Debtors that is made or deemed to have been made, and iii) any federal or provincial statute, the payments or dispositions of property made by the Debtors pursuant to this Order and the granting of the CCAA Charges do not and will not constitute settlements, fraudulent preferences, transfers at undervalue or other challengeable or reviewable transactions or conduct meriting an oppression remedy under any applicable law.

[66]    **DECLARES** that the CCAA Charges shall be valid and enforceable as against all Property of the Debtors and against all Persons, including any trustee in bankruptcy, receiver, receiver-manager or interim receiver of the Debtors, for all purposes.

**Procedures**

[67]    **ORDERS** that, subject to a further order of this Court, all applications in these CCAA Proceedings are to be brought on not less than five (5) business days' notice to all Persons on the service list prepared by the Debtors or their counsel in connection with the CCAA Proceedings (the "**Service List**"). Each application shall specify a date (the "**Initial Hearing Date**") and time (the "**Initial Hearing Time**") for the hearing.

[68]    **ORDERS** that any Person wishing to oppose or object to the relief sought on an application in these CCAA Proceedings must serve a detail written contestation relating to the application or notice stating the opposition or objection to the application and the grounds for such opposition or objection (a "**Contestation**") in writing to the Agents, the Debtors and the Monitor, with copies to all Persons on the Service List, no later than 5:00 p.m. on the date that is three (3) business days prior to the Initial Hearing Date (the "**Objection Deadline**"). If an application is made with less than five (5) business days' notice, the Objection Deadline will be brought forward by an equal and corresponding period of time.

[69]    **ORDERS** that, if no Contestation is served before the Objection Deadline, the judge in charge of the CCAA Proceedings (the "**Presiding Judge**") may determine: i) whether a hearing is necessary; ii) whether such hearing will be held in person, by videoconference, by telephone or by written submissions only (on the basis of the file), and iii) the parties from whom submissions are required (collectively, the "**Hearing Details**"). In the absence of such a determination, a hearing will be held in the ordinary course.

[70]    **ORDERS** that, if no Contestation is served by the Objection Deadline, the Monitor or the Monitor's legal counsel shall communicate with the Presiding Judge regarding whether a determination has been made by the Presiding Judge concerning the Hearing Details. The Monitor or the Monitor's legal counsel shall thereafter advise the Service List of the Hearing Details, and the Monitor shall report upon its dissemination of the Hearing Details to the Court in a timely manner, which report may be included in the Monitor's next report under the CCAA Proceedings.

[71]    **ORDERS** that, if a Contestation is served before the Objection Deadline, the interested parties shall appear before the Presiding Judge on the Initial Hearing Date at the Initial Hearing Time, or such earlier or later time as may be directed by the Court, for the following purposes: a) proceed with the hearing on the Initial Hearing Date and at the Initial Hearing Time; or b) establish a schedule for the delivery of materials and the hearing of the contested application and other matters, including interim relief, as the Court may direct.

**General**

[72]    **ORDERS** that no Person shall commence, proceed with or enforce any Proceedings against any of the Directors, employees, legal counsel, or financial

advisors of the Debtors, the members of the syndicate of Lenders or the Monitor, in relation with CCAA Proceedings, the Business or Property of the Debtors, without first obtaining leave of the Court, upon five (5) days' written notice to all those referred to in the present paragraph whom it is proposed to be named in such Proceedings;

[73] **DECLARES** that this Order and any proceedings and affidavit leading to the Order, shall not, in and of themselves, constitute a default or a failure to comply by the Debtors under any statute, regulation, licence, permit, contract, permission, covenant, agreement, undertaking or other writing or requirement.

[74] **DECLARES** that, except as otherwise specified herein, the Debtors and the Monitor are at liberty to serve any notice, proof of claim form, proxy, circular or other document in connection with these proceedings by forwarding copies by ordinary mail, prepaid postage, courier, personal delivery or electronic transmission to the Persons or other appropriate parties at their respective given addresses as last shown on the records of the Debtors; the document so served shall be deemed to be received on the date of delivery, if by personal delivery or electronic transmission, on the following business day, if delivered by courier, or three (3) business days after mailing, if by ordinary mail.

[75] **DECLARES** that the Debtors, the Monitor and any party to this proceeding may serve all documents relating to this proceeding on all represented parties by emailing such materials to counsels' email addresses.

[76] **DECLARES** that, except as otherwise provided herein, under the CCAA or ordered by this Court, no document, order or other materials need to be served on any Person in respect of these proceedings, unless such Person has served a Notice of Appearance on the counsel for the Debtors and the Monitor and its counsel and has filed such notice with the Court or appears on the Distribution List, save and except when an order sought against a Person not previously involved in these proceedings.

[77] **DECLARES** that Exhibits R-8, R-9, R-14, R-17 and R-18 in support of the Application as well as Annex A of the Monitor's Report (Exhibit R-16) be kept confidential and under seal until further order of the Court to the contrary.

[78] **DECLARES** that the Monitor may, from time to time, file an application to this Court for directions concerning the exercise of their respective powers, duties and rights hereunder or in respect to the proper execution of the Order on notice only to the other parties.

[79] **DECLARES** that this Order and all other orders in this proceeding shall have full force and effect in all provinces and territories in Canada.

[80] **DECLARES** that the Monitor shall be authorized to apply, as it may consider necessary or desirable, with or without notice, to any other court or administrative body whether in Canada, the United States of America or elsewhere for orders

which aid with respect to the Order and any subsequent orders of this Court and, without limitation to the foregoing, an order under Chapter 15 of the United States *Bankruptcy Code*, in respect of which the Monitor may act as foreign representative of the Debtors. All courts and administrative bodies of all such jurisdictions are hereby respectively requested to make such orders and to provide such assistance to the Monitor as may be deemed necessary or appropriate for that purpose.

[81]  **REQUESTS** the aid and recognition of any Court or administrative body in any Province of Canada, of any federal court or administrative body of Canada, as well as of any federal or state court or administrative body in the United States of America and of any court or administrative body elsewhere, to act in aid of this Court and act as its auxiliary for the purpose of carrying out the terms of this Order.

[82]  **DECLARES** that, for the purposes of any application to a foreign authority, the place of the Debtors' center of main interest is in the province of Quebec, Canada.

[83]  **ORDERS** the provisional execution of the Order notwithstanding any appeal.

_____

**THE HONOURABLE ERIC HARDY, J.S.C.**

- 20 -

**APPENDIX " A "**

**MONITOR'S CERTIFICATE**

CERTIFICATE NO : [●]


AMOUNT : $ [●]


1.      **THIS IS TO CERTIFY** that **Ernst & Young Inc.** acting as Monitor (the
" **Monitor** ") appointed by the Superior Court of Quebec (Commercial Division)
(the "**Court**") with respect to Laboratoires C.O.P. Inc, 9327-6269 Québec inc,
Pharmalab Inc. and Ideal Protein of America, Inc. (collectively, the "**Debtors**"),
pursuant to an order issued by the Court on [August 15, 2023] (as amended
and/or restated, from time to time, the "**Initial Order** in Court file number [●],
hereby certifies that it has received from the holders of this certificate (the
"**Lenders**") an interim advance (the "**Interim Advance**") in the principal amount
of $**[●]**, the whole in accordance with the provisions set forth in the Initial Order.


2.      The Interim Advance, evidenced by this certificate (the "**Certificate**"), is payable
on demand by the Lenders, with interest thereon calculated and compounded
monthly and not in advance, on the **[●]** day of each month, after the date hereof,
at an annual rate equal to **[●]** % over the Bank of Canada's prime rate of interest
in effect at the time the Interim Advance is made.


3.      All amounts due to the Lenders in connection with the Interim Advance, as
evidenced by this Certificate, are secured by the "**Interim Advance Charge**", as
ordered by the Court pursuant to the Initial Order.


4.      Until the amounts due to the Lenders in connection with the Interim Advance
evidenced by this Certificate have been repaid to the Lenders, no other charge or
security of a higher rank may be granted against the property of the Debtors,
unless the prior consent of the Lenders has been obtained.


5.      The Monitor acts hereunder as Monitor of the Debtors, and not in a personal
capacity, and therefore does not incur any personal liability in connection with
this Certificate.

*[Signature Page Follows]*

DATED the [●]. Day of [●], 2023.

By    Ernst & Young Inc., solely in its capacity as Monitor of the Debtors, and not in its personal capacity

Par :

_____

Name : [●].

Title : [●].